**IN THE COURT OF APPEALS OF IOWA**

No. 20-1643
Filed March 3, 2021

**IN THE INTEREST OF D.C. and C.S.,**
**Minor Children,**

**K.C., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.


　　　A mother appeals the termination of her parental rights to her two daughters. **AFFIRMED.**


　　　Gina L. Kramer of Reynolds & Kenline, L.L.P., Dubuque, for appellant mother.

　　　Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

　　　Kristy L. Hefel of Public Defender's Office, Dubuque, attorney and guardian ad litem for minor children.


　　　Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

A mother, Kayla, appeals the termination of her parental rights to her one-year-old and three-year-old daughters.[1] Kayla argues that ending their legal relationship is not in the girls' best interests. *See* Iowa Code § 232.116(2) (2020). She also contends the juvenile court should have denied the State's petition to terminate based on the closeness of their parent-child relationships. *See* Iowa Code § 232.116(3)(c). Because of her severe alcohol addiction, Kayla has not been a safe or stable caregiver for the children. From our independent review of the record, we see little evidence that termination will harm the children based on the strong bond with their mother.[2] Moving the children toward an adoptive home is in their best interests.

Like many Iowans, Kayla faced much hardship in 2020. The year was plagued by hospitalizations related to Kayla's alcohol abuse. The DHS removed D.C. and C.S. from her care from December 2019 through February 2020, and again from June 2020 until the termination order in December 2020.

After the first removal, Kayla went into the Heart of Iowa residential treatment program. Her initial success prompted the DHS to place the children with her in that protective setting in February. That trial home placement turned

---

[1] The juvenile court also terminated the parental rights of C.S.'s father, Jordan. His acts of domestic violence launched the Iowa Department of Human Services (DHS) investigation of the family in August 2019. He is not a party to this appeal. The court had to reset the termination-of-parental-rights hearing for D.C.'s father, Desmond. He was in prison at the time of the November 2020 hearing.
[2] We review termination orders de novo. *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). The juvenile court's factual findings do not bind our determination. *Id.* But we accord them weight, especially when we assess witness credibility. *Id.* The children's best interests drive our review. *Id.*

into restoration of custody for Kayla in March. Then in early June, she moved with the children from Heart of Iowa into her own residence in Cedar Rapids. Just five days later, she lapsed. She was so intoxicated a friend stepped in to care for the children.

As only 2020 could, the year continued to take its toll. While the children were out of her care for the second time, Kayla's visitations were disrupted by both the pandemic and the derecho. She tested positive for COVID-19 early in the summer. Then in August her residence suffered damage from the high winds. Between June and September, she did not have any in-person interactions with the children. She also continued to abuse alcohol and disengage from DHS services during those months.

When Kayla restarted visitation with the children in September, more problems arose. During a September 18 visit, the social worker found that Kayla was intoxicated and unable to engage with the children. Four days later, Kayla cancelled a visit because she was in the hospital for detoxification.

It was also in September that the State petitioned to terminate Kayla's parental rights. The juvenile court set the termination hearing for November. In those intervening months, the DHS scheduled six visits, but Kayla cancelled half of them "due to her intoxication." Kayla also failed to appear for the termination hearing. Her attorney was not sure why she did not attend but told the court that Kayla "loves her kids very much" and "was devastated at the thought of her rights being terminated."

The court terminated Kayla's parental rights to D.C. and C.S. based on Iowa Code section 232.116(1)(h) and (l). Finding termination was in the children's best interests under section 232.116(2), the court offered this explanation:

> The Court finds the children have had to deal with much disruption and instability in their young lives. Given the length of time they have been out of parental care, the Court finds that permanency is overdue and that the children deserve a safe and stable home. The Court finds that termination and adoption will best meet the children's long-term physical and emotional needs and will be in the best interests of the children.

The court also decided "no consequential factors" in section 232.116(3) applied to prevent termination. On appeal, Kayla challenges the court's findings under section 232.116(2) and (3).

We first turn to the best-interests framework in section 232.116(2). In considering whether termination is in the children's best interests under this statute, we give "primary consideration" to their safety, "to the best placement for furthering [their] long-term nurturing and growth," and to their "physical, mental, and emotional condition and needs." Iowa Code § 232.116(2). We also examine whether Kayla's ability to provide for the children's needs is affected by her mental condition. *See J.H.*, 952 N.W.2d at 171.

The record shows Kayla was dealing with significant mental-health issues. The social worker testified Kayla did not follow up on professional recommendations for counseling or medication management. During the case, Kayla did not make any meaningful strides toward addressing her alcohol addiction. The only time the social worker saw progress was when Kayla was undergoing inpatient treatment.

Kayla continues to struggle with the same problems identified at the start of these proceedings. Like the juvenile court, we find she cannot provide the structure and consistency the children need to be safe and reach their full potential. *See In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006). Their best interests are not served by waiting longer for Kayla to become a responsible parent. *See id.*

Before closing, we consider the permissive factor precluding termination under section 232.116(3)(c).[3] Under that statute, it is Kayla's burden to prove "[t]here is clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship." *See J.H.*, 952 N.W.2d at 174. The service provider testified that during visits she did not see a "significant bond" between Kayla and the children. And even if those bonds did exist, Kayla did not offer proof that severing those bonds would harm the children more than perpetuating their uncertainty. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Section 232.116(3)(c) does not inhibit termination under these circumstances.

**AFFIRMED.**

---

[3] The State contests error preservation on this issue because Kayla presented no evidence that her bond with the girls was so strong that termination would damage their well-beings. Because "the juvenile court did address the possible existence of section 232.116(3) exceptions," we will assume that Kayla's argument is properly before us. *See J.H.*, 952 N.W.2d at 174.